Eldridge Ray PARNELL *v.* STATE of Arkansas.

CR 95-573                                              912 S.W.2d 422

Supreme Court of Arkansas
Opinion delivered January 8, 1996

*Snellgrove, Laser, Langley, Lovett, & Culpepper*, by: *Todd Williams* and *Barrett & Deacon*, by: *D.P. Marshall, Jr.*, for appellant.

*Winston Bryant*, Att'y Gen., by: *J. Brent Standridge*, Asst. Att'y Gen., for appellee.

ROBERT L. BROWN, Justice. The appellant, Eldridge Ray Parnell, was convicted of rape. He appeals on the basis that the

State's case was premised on his causing the crime of rape between his two adopted children and that what occurred between the two children did not constitute rape under Arkansas law. Accordingly, he maintains that he could not be guilty of the crime. We disagree, and we affirm the conviction.

The facts in this case were developed at Parnell's trial. Audrey Parnell testified that she married Parnell in 1989 and he adopted her two children, B.P. and E.P., in 1991. Parnell worked as a radio dispatcher on the night shift at the Craighead County jail. Toward the end of July in 1993, Parnell suffered a work-related injury while attempting to lock up a prisoner and was off work for ninety days. During this time, he was home with the children.

On February 4, 1994, Audrey Parnell had a conversation with her son, B.P. She testified that her son told her that Parnell had forced him to have sex with his sister, E.P. At the time of these events, B.P. was age 9 or 10 and E.P. was age 8. When Audrey Parnell confronted Parnell by telephone with what B.P. had told her, he responded that he caught the kids "doing things with each other" in B.P.'s bedroom, and "he told them to go for it." Following this conversation, she called the child abuse agency, SCAN, and removed the children from Parnell's house. The next day, on February 5, 1994, she took the children to St. Bernard's Hospital in Jonesboro for a physical examination. Later, she initiated divorce proceedings. The divorce was final by the time of Parnell's trial.

Parnell was initially charged with sexual abuse in the first degree and sexual solicitation of a child less than age 14. The information was amended three months later to include a rape count.

B.P. testified at trial that Parnell "made me stick my front private part in my sister's mouth." He further testified that Parnell made him "put his front private in his sister's back private." He testified that this would occur in the afternoon when his mother was at work or at the mall or the store. He agreed that it happened more than 10 times. B.P. also testified that Parnell told them that if they told their mother, she would be put in jail and the children would go to a foster home. B.P. admitted that he eventually told his mother.

E.P. testified that Parnell made her perform oral sex on her brother and made her brother perform sex with her in her "back private." She added, "He said if we didn't do it, he would put us in jail." E.P. testified that appellant made B.P. do this to her because she was "talking." E.P. agreed that it happened more than five or six times. E.P. also testified that Parnell once summoned her into the bathroom and made her rub his penis. A nurse, Tracey Pilgrim, confirmed in her testimony that E.P. told her at the hospital essentially the same thing about sex with her brother.

Parnell moved for a directed verdict on all charges at the close of the State's case and argued that the State had failed to prove the elements of rape, sexual abuse in the first degree, or sexual solicitation of a child. The trial court denied the motion for directed verdict on all counts. Parnell then took the stand in his own defense and denied that he ever caused B.P. and E.P. to have sexual relations. The jury convicted Parnell of rape and sexual abuse in the first degree, and he was sentenced to ten years imprisonment for rape and three years probation for sexual abuse.

█ Parnell first contends in this appeal that he had no notice prior to trial that the State would proceed on a complicity theory in establishing its case for rape. The facts in this case belic that contention. The criminal information expressly charged Parnell with rape by forcing his adopted children to engage in sexual relations. More importantly, though, Parnell's counsel never argued his lack of notice of the State's theory of the case to the trial court either by way of a motion for directed verdict or an objection to instructions. We do not entertain arguments raised for the first time on appeal. *Hodges* v. *Gray*, 321 Ark. 7, 901 S.W.2d 1 (1995); *Arkansas Office of Child Support Enforcement* v. *House*, 320 Ark. 423, 897 S.W.2d 565 (1995). This point, therefore, is not preserved for our review.

The crux of Parnell's appeal centers on his argument that he cannot be guilty of causing rape if the two children themselves were not guilty of that crime. We begin by quoting pertinent parts of the statutory definition of rape:

> (a) A person commits rape if he engages in sexual intercourse or deviate sexual activity with another person:

(1) By forcible compulsion; or

(2) Who is incapable of consent because he is physically helpless; or

(3) Who is less than fourteen (14) years of age.

It is an affirmative defense to prosecution under this subdivision that the actor was not more than two (2) years older than the victim. . . .

Ark. Code Ann. § 5-14-103 (Repl. 1993). The statute is precise in stating that one commits the crime of rape if he engages in sexual intercourse with a person who is less than 14 years of age.

In the instant case, B.P. was 9 or 10 at the time of his sexual relations with his sister, and E.P. was 8. Under our juvenile statutes, a 10-year-old may be subject to commitment as a juvenile delinquent for the crime of rape. Ark. Code Ann. § 9-27-303 (11) (Repl. 1993). But regardless of that fact, B.P. had clear defenses to any such charge because he acted under the duress of his adoptive father and because he was no more than 2 years older than his sister at the time of the sexual activity.

The fact that B.P. would not be guilty of a crime, however, does not inure to Parnell's benefit. An Arkansas statute specifically embraces the circumstances of the instant case and expressly makes complicitous conduct a crime:

A person is made criminally liable for the conduct of another person when:

. . . .

(3) Acting with the culpable mental state sufficient for the commission of the offense, he causes another person to engage in conduct that would constitute an offense but for a defense available to the other person.

Ark. Code Ann. § 5-2-402 (Repl. 1993); *see also* Ark. Code Ann. § 5-2-405 (Repl. 1993). A plain reading of § 5-2-402(3) renders Parnell criminally culpable irrespective of B.P.'s age defense or the fact that he acted only under duress. The trial court instructed the jury to this effect: "[Parnell] is criminally liable for the conduct of B.P. if, [Parnell] purposely, knowingly,

or recklessly caused B.P. to engage in conduct that would constitute rape but for a defense available to B.P." This is precisely what § 5-2-402(3) provides. As a result, the trial court committed no error in instructing the jury as it did.

Our statutory law, as codified at § 5-2-402(3), resembles § 2.06(2) of the Model Penal Code:

> A person is legally accountable for the conduct of another person when:
>
> (a) acting with the kind of culpability that is sufficient for the commission of the offense, he causes an innocent or irresponsible person to engage in such conduct
> . . . .

Model Penal Code § 2.06 (Am. L. Inst. 1985). The Comment to § 2.06(2) recognizes that the subsection is based on the universally recognized principle that one is no less guilty of the commission of a crime because he uses the overt conduct of an innocent agent. The Commentary to § 5-2-402(3), as originally codified at Ark. Code Ann. § 41-302 (Repl. 1977), specifically acknowledged § 2.06 of the Model Penal Code and this principle.

Our interpretation of § 5-2-402(3) in this matter is consistent with results reached in other jurisdictions. *See Morrisey* v. *State*, 620 A.2d 207 (Del. 1993); *State* v. *Harvey*, 736 P.2d 191 (Or. 1987); *State* v. *Presley*, 694 S.W.2d 867 (Mo. App. 1985). In *Morrisey* v. *State, supra*, the Delaware Supreme Court reviewed a case where a defendant was convicted of multiple counts of unlawful sexual intercourse for forcing two couples at apparent gunpoint to engage in various sexual acts. The defendant argued on appeal that the innocent couples were voluntary social companions and neither forced the other into sexual activity. The Supreme Court dismissed the defendant's argument and looked both to Delaware law concerning complicitous conduct and to Model Penal Code § 2.06 in affirming the convictions. The Court stated:

> It is well-established at common law that an individual is criminally culpable for causing an intermediary to commit a criminal act even though the intermediary has no criminal intent and is innocent of the substantive crime.

*Morrisey*, 620 A.2d at 211. The Court concluded that the innocent intermediaries were "viewed legally as only an instrumentality of the crime," and that the defendant was the principal perpetrator. *Id.*

In *State* v. *Harvey, supra,* the defendant contended on appeal that he could not be convicted of rape for forcing his 14-year-old son to engage in sexual acts with his 11-year-old stepdaughter. The Oregon Court of Appeals agreed, but the Oregon Supreme Court reversed and reinstated the rape convictions. In doing so, the Supreme Court invoked an Oregon statute on complicity which is similar to ours in Arkansas and wrote that under the statute it "is no defense for the adult defendant that his juvenile son could not be criminally tried for first degree rape although an adult could be." *Harvey*, 736 P.2d at 192.

And, finally, in *State* v. *Presley, supra,* the defendant was charged with rape for aiding and encouraging his 14-year-old stepson to have sexual intercourse with his adoptive daughter who was less than 14. The defendant argued that due to the age of his stepson, he could not be guilty of rape, but the Missouri Court of Appeals held that that fact did not absolve the defendant under Missouri statutes. The Court observed that Missouri's complicity statute included, as a basis for liability, instances when a defendant causes an innocent person to commit the criminal acts.

■ The trial court, in the instant case, committed no error in ruling as it did.

Affirmed.